# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARBELLA SERVICE COMPANY, INC., *Plaintiff*, v. GENESYS CLOUD SERVICES, INC. f/k/a GENESYS TELECOMMUNICATIONS LABORATORIES, INC., *Defendant.* | C.A. No. _____ **JURY TRIAL DEMANDED** |

## <u>VERIFIED COMPLAINT</u>

## NATURE OF THE ACTION

1. Plaintiff Arbella Service Company, Inc. ("Arbella") brings this action for anticipatory and actual breach of contract and breach of the implied covenant of good faith and fair dealing based on Defendant Genesys Cloud Services, Inc.'s, formerly known as Genesys Telecommunications Laboratories, Inc. ("Genesys"), stated intention not to perform its contractual obligations owed to Arbella.

2. Arbella contracted with Genesys to provide and maintain the telecommunications platform and services that Arbella uses to operate its Contact Centers. Arbella's Contact Centers are the communications hub of the Arbella Insurance Group. As an insurance company, receiving, managing, and responding to inbound inquiries is critical. These inbound inquiries include insurance claims, payments, policy changes, and other customer service functions.

3. The services Genesys contracted to provide to Arbella are called the PureConnect Cloud Services. The Contact Centers depend on the PureConnect Cloud Services to function.

4. In its agreements with Arbella, Genesys contracted to provide and maintain the PureConnect Cloud Services until August 2024 and thereafter, *at Arbella's exclusive option*, until July 2025.

5. Previously, Genesys publicly announced that the PureConnect Cloud Services would be retired effective July 2025. In other words, Genesys represented that the PureConnect Cloud Services would be provided throughout the duration of the agreements. The publicly announced retirement date of July 2025 was consistent with the agreements between Arbella and Genesys.

6. Then, suddenly and without warning, Genesys announced that it was accelerating the retirement date of the PureConnect Cloud Services forward nine months, from July 2025 to October 2024. Failing to provide the PureConnect Cloud Services to Arbella for the duration of the relevant agreements constitutes breach of contract.

7. Arbella demanded that Genesys retract the accelerated retirement of the PureConnect Cloud Services and provide Arbella with adequate assurances that Genesys will perform under the relevant agreements through July 2025.

8. Genesys has repeatedly refused to provide the requested assurances, in knowing breach of its contractual obligations.

9. Genesys' sudden refusal to perform—in direct contravention of its prior statements that the PureConnect Cloud Services would remain available through July 2025 and its contractual obligations—constitutes gross negligence or willful misconduct.

10. Arbella is attempting to mitigate its damages at great burden and expense. However, cessation of the PureConnect Cloud Services in October 2024 will irreparably harm Arbella because a suitable replacement service is unlikely to be implemented by that date. In that

event, Arbella's Contact Centers will no longer be able to effectively function. The Company's workflow management system will be lost. This will lead to inevitable customer service disruptions and increases in claim costs, the extent of which are difficult to quantify. Loss of the Company's workflow management system will also result in delays in policy servicing and claim processing, which harms both Arbella and its policyholders. Service interruptions will irreparably harm Arbella's relationships with its policyholders and agents—relationships that Arbella has spent decades developing and cultivating. Additionally, Arbella's brand and reputation in the marketplace will be irreparably damaged as a result of Genesys' conduct.

11. Arbella therefore brings this action to enforce its contractual and extracontractual rights and require Genesys to perform its obligations by providing and maintaining the PureConnect Cloud Services through July 2025, as Genesys originally promised.

**PARTIES**

12. Plaintiff Arbella Service Company, Inc. is a Massachusetts corporation with its principal office located at 1100 Crown Colony Drive, Quincy, Massachusetts, 02269.

13. Arbella Service Company, Inc. is the service company that provides administrative, operational, and managerial services to Arbella Mutual Insurance Company and its subsidiary insurance companies and affiliates (collectively, "Arbella Insurance Group" or the "Company").

14. Defendant Genesys Cloud Services, Inc., formerly known as Genesys Telecommunications Laboratories, Inc. ("Genesys") is a California corporation with its principal office located at 1302 El Camino Real, Suite 300, Menlo Park, California, 94025.

15. Upon information and belief, Genesys changed its corporate name from Genesys Telecommunications Laboratories, Inc. to Genesys Cloud Services, Inc. effective March 15, 2021.

16. Genesys is a software company that sells customer experience and call center technology to businesses.

## JURISDICTION AND VENUE

17. Subject-matter jurisdiction is proper under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

18. Personal jurisdiction over Genesys is proper under M.G.L. c. 223A § 3 because, among other things, Genesys purposefully availed itself to the Commonwealth of Massachusetts by transacting business here and by contracting and supplying services to Arbella in Massachusetts. Arbella's causes of action in this dispute arise out of or relate to Genesys' contacts in the Commonwealth of Massachusetts.

19. Venue is proper under 28 U.S.C. § 1391(b)(2) because, among other things, a substantial part of the events or omissions giving rise to the claims occurred in this district because Genesys contracted with Arbella, a Massachusetts-based entity, to provide certain services under the agreements at issue in this dispute.

## FACTS

20. Originally founded in 1988 as Arbella Mutual Insurance Company, the Arbella Insurance Group is a leading regional provider of property and casualty insurance in New England. Arbella Insurance Group provides insurance across personal and commercial lines for auto, home, and businesses.

21. Arbella Service Company, Inc. provides administrative, operational, and managerial services to the entire Arbella Insurance Group.

22. One of the hallmarks of Arbella Insurance Group's brand and industry reputation is the high level of prompt, personalized, and empathetic service the Company provides to its customers. The Company's reputation for best-in-class customer service and satisfaction has led to extraordinary growth in recent years. The Arbella Insurance Group's annual revenue for the

last fiscal year exceeded $1 billion.  The Company has over $2 billion in total assets.  On an annual basis, the Company issues nearly half a million insurance policies to policyholders in the New England region.  This level of growth would not have been possible without the recognition and reputation that Arbella Insurance Group has earned for its exceptional customer service.

23. To communicate with customers and respond to policyholder claims, Arbella operates five communication hubs (the "Contact Centers").

24. The Contact Centers are a critical piece of the Company's business operations.  The volume of communications that flow through the Contact Centers is massive.  For example, in 2022, the Contact Centers received approximately 695,000 policyholder and agent phone and chat inquiries.  Arbella has over 1,000 employees, nearly all of whom relay on the services provided by the Contact Centers on a daily basis.

25. For the Arbella Insurance Group, promptly receiving and responding to policyholder claims is not simply good business—it is also required under the law.  The inability to respond to and process claims could have devastating consequences on Arbella Insurance Group's business.

26. To communicate with policyholders, claimants, and agents, the Contact Centers rely on an omnichannel service platform called the Genesys PureConnect Cloud Services to receive, route, and respond to policyholder and agent communications.

27. Genesys PureConnect Cloud Service is an interactive voice response ("IVR") system that allows callers to interact with Arbella's telecommunication network through voice commands or keypad inputs.  Arbella also uses the Genesys PureConnect Cloud Service to route inbound email and chat messages within the Company's communications platforms.  These communication systems are essential to Arbella's business operations.

*The Master Subscription Agreement, the Statement of Work, and the Service Orders*

28. On September 29, 2017, Arbella and Genesys entered into the Master Subscription Agreement ("MSA"). Through the MSA, the parties "agree[d] to be bound by this Agreement and any separately executed Service Orders and SOWs incorporating this Agreement." (MSA, p. 1.)

29. Genesys agreed to provide Arbella with Genesys PureConnect Cloud Services. (MSA § 13.15.) The scope of the Genesys PureConnect Cloud Services were further defined in the Statement of Work (the "SOW") and various Services Orders.

30. Genesys and Arbella entered a series of Service Orders, each separately negotiated and executed, and each governed by the MSA.

31. On September 29, 2017, the Parties entered into Services Order 2017-6257290 (the "2017 Services Order"), which had a three-year term and month-to-month automatic renewals thereafter.

32. Effective June 15, 2021, the Parties entered into Services Order 2020-6826385 (the "2021 Services Order"), which had a two-year term and automatic annual renewals thereafter.

33. On May 16, 2022, before the Parties entered into their next Services Order, Genesys announced that the PureConnect Cloud Services were at their End of Life and would be retired *effective July 31, 2025*. Genesys represented that its customers—including Arbella—"will continue to be supported on this product through July 31, 2025, and we are providing visibility into the actions that the company will take up to the [End-of-Life] date."

34. Effective August 15, 2023, the parties entered into Services Order 2023-61051859 (the "2023 Services Order"), which had a one-year term and a month-to-month Customer renewal option. Specifically, the 2023 Services Order provides in the Special Terms & Notes section, that:

> Customer agrees to extend their subscription term by 1 year(s), ("Initial Subscription Term") which will begin 8/15/2023 upon the expiration of the current subscription term.

> Customer shall have the right to extend the Initial Subscription Term, on a month-to-month basis, for no more than an additional eleven (11) months following the expiration of the Initial Subscription Term by providing Genesys at least thirty (30) days advance written notice of its intent to extend the term for the following month.

(2023 Services Order, p. 3) (hereinafter, the "Renewal Option").

35. The Renewal Option provides Arbella with the right to extend the 2023 Service Order on a month-to-month basis from August 15, 2024 until July 15, 2025.

36. The Renewal Option was heavily negotiated and specifically bargained-for.

37. In negotiating the Renewal Option, Genesys represented that the PureConnect Cloud Services would be available to Arbella, at its option, until July 2025.

38. Arbella's Renewal Option until July 15, 2025 was nearly coextensive with Genesys' previously-announced "End-of-Life" date of July 31, 2025 for the PureConnect Cloud Services.

39. The 2023 Services Order included a reference to Genesys' previous End-of-Life announcement for the PureConnect Cloud Services, which Genesys stated would remain available until July 2025.

40. Arbella relied on Genesys' public and private representations that the PureConnect Cloud Services would remain available until July 2025 when it bargained-for the right to extend the PureConnect Cloud Services until July 2025.

41. In the event of a party's failure to perform or breach of the Agreements, the MSA's limitation of liability provision does not apply to any breach that resulted from a party's "gross negligence or wilfull [*sic*] misconduct." (MSA § 6.3.)

42. The MSA, which is governed by New York law, provides that in the event of a dispute, "the prevailing party will be entitled to recover its cost of enforcing its claim, including but not limited to attorney fees." (MSA § 12.7.)

43. To date, Arbella has fully performed under the Agreements.

### *Genesys' Refusal to Perform Under the Agreements*

44. In December 2023, after executing the 2023 Services Order, Genesys first informed Arbella that it had unilaterally decided to accelerate the previously-announced July 2025 "End-of-Life" date for Genesys PureConnect Cloud Services to October 2024.

45. Upon information and belief, Genesys began considering whether to accelerate the PureConnect Cloud Services End-of-Life date long before December 2023, and possibly before the effective date of the 2023 Services Order.

46. Upon information and belief, when Genesys made the decision to accelerate its PureConnect Cloud Services End-of-Life date, Genesys knew of the existence of Arbella's Renewal Option under the 2023 Services Order

47. Upon information and belief, when Genesys made the decision to accelerate its PureConnect Cloud Services End-of-Life date, Genesys knew that Arbella intended to exercise the Renewal Option at the time to October 2024.

48. In a December 18, 2023 meeting, Kyle Kuntz, Genesys' Vice President of Genesys Engage & PureConnect, disclosed to Arbella for the first time that Genesys had decided to accelerate the PureConnect Cloud Services End-of-Life date. Mr. Kuntz made this disclosure in a passing comment, the significance of which Arbella did not understand at the time. In fact, three days later, Arbella requested clarification of the deadline from Genesys, asking whether Genesys was stating that the deadline had been accelerated.

49. That same day, Tom Pistone, Genesys' Customer Success Advisor, explained the new deadline as follows:

> [Y]es that was what our VP Kyle [Kuntz] was speaking to on Monday [December 18, 2023]. We have only 6 PureConnect customers (Arbella included) that have no migration plans past October 31st 2024, so our leadership team is requesting we work with these 6 customers to find a way to manage a migration off our platform by this date, ***as keeping the platform active for 6 users between Nov and July wouldn't be fiscally viable***.

50. Genesys took a calculated gamble. With few remaining customers on the platform, it bet that it could leverage or commercially extort the remaining customers (including Arbella) into giving up their contractually-bargained for rights and entering into a new deal that would be more "fiscally viable" for Genesys. While Genesys attempted to dress up this maneuver as somehow beneficial for Arbella, Genesys baldly admitted that it was reneging on its contractual obligations in its ***own*** economic self-interest.

51. At a subsequent meeting on January 9, 2024, and via email on January 15, 2024, Arbella explained to Jason Melton, Genesys' Director of Business Operations, and others, that Genesys could not accelerate the Genesys PureConnect Cloud Services "End-of-Life" date in violation of Arbella's contractual right to extend its subscription to those services until July 2025.

52. On February 1, 2024, Tamsen Bhachech, Deputy General Counsel for Genesys, wrote to Arbella stating that Genesys will be "shutting down the PureConnect Cloud data centers" as of October 2024.

53. When Genesys reaffirmed its decision to accelerate the PureConnect Cloud Services' End-of-Life date to October 2024, Genesys knew that Arbella has the contractual right to, and Arbella in fact intended to, exercise the Renewal Option.

54. On February 5, 2024, Arbella, through its counsel, responded to Genesys, explaining that Genesys' unequivocal statement that it intended not to perform under the

Agreements constituted an anticipatory breach of contract, gross negligence, and willful misconduct. Arbella demanded that Genesys retract its anticipatory breach and provide adequate assurances that it would honor its contractual obligations and continue performance under the Agreements until July 2025, at Arbella's bargained-for Renewal Option.

55. In this correspondence, Arbella also explained that it would seek specific performance of the Agreements, if necessary, in order to maintain the functionality of Arbella's Contact Centers, which depend on the PureConnect Cloud Services.

56. Arbella further explained that Genesys' cessation of the PureConnect Cloud Services would render Arbella's Contact Centers inoperable and bring Arbella's ability to support its policyholders, claimants, agents, and employees to a standstill.

57. For over seven weeks, Genesys did not respond.

58. Finally, on March 28, 2024, Genesys communicated with Arbella. But in doing so it refused to retract its anticipatory breach and ignored Arbella's demand for adequate assurances. Instead, Tamsen Bhachech responded on behalf of Genesys, reiterating that Genesys had "no intention to continue the PureConnect Cloud platform beyond the previously announced [End-of-Life] date in October 2024."

59. On March 28, 2024, when Genesys again reaffirmed its decision to accelerate the PureConnect Cloud Services' End-of-Life date to October 2024, Genesys knew that Arbella has the contractual right to, and that Arbella in fact intended to, exercise the Renewal Option.

60. On April 30, 2024, counsel for Arbella once again communicated with Genesys, explaining that Genesys was in willful disregard of its contractual obligations and requesting that Genesys change its unreasonable position. For weeks, Genesys delayed and dragged its feet.

61. On May 13, 2024, counsel for Arbella convened a call with Genesys' in house counsel, Tamsen Bhachech and Allen Chiu. Despite Arbella's efforts, Genesys refused to reconsider its unreasonable position and continued to intentionally disregard its contractual obligations owed to Arbella.

### *Arbella will be Irreparably Harmed if Genesys Shuts Down the PureConnect Cloud Services in October 2024*

62. Arbella is attempting to mitigate its damages in the face of Genesys' wrongful conduct. But Arbella reasonably believes that it will not be able to implement a suitable replacement and fully transition service platforms before October 2024, which is Genesys' threatened date of shutting down the PureConnect Cloud Services.

63. Genesys' decision to accelerate the PureConnect Cloud Services End-of-Life date, and wrongful pattern of conduct leading up to and following that decision, has caused, and will continue to cause, Arbella to incur additional expenses and damages. Even if Arbella is able to find a suitable replacement provider, Arbella reasonably believes that it will not be able to complete the transition to a new service provider by October 2024.

64. In that event, Arbella will be irreparably injured. Cessation of the PureConnect Cloud Services without a suitable replacement will render Arbella's Contact Centers inoperable and bring Arbella's ability to support its policyholders, agents, and employees to a standstill.

65. Without the PureConnect Cloud Services, Arbella will have no workflow management system, be unable to manage call volume, will be required to manually route inbound inquiries, and will have to hire dozens or hundreds of additional temporary employees to attempt to manage the business of the Contact Centers.

66. Service interruptions in the Contact Centers may expose Arbella Insurance Group (as well as its policyholders) to substantial economic harm resulting from delays in responding to or processing insurance claims received by the Contact Centers.

67. Further, any service interruptions in the Contact Centers will harm Arbella's relationships with its policyholders and agents, damage Arbella's brand, and cause Arbella to suffer other reputational harm.

## COUNT I
### Anticipatory Breach of Contract

68. Arbella realleges and incorporates by reference the allegations of the paragraphs 1 through 67 of this Complaint as though fully set forth herein.

69. The Agreements between Arbella and Genesys are binding and enforceable agreements.

70. Arbella has performed under the Agreements.

71. The Agreements required that Genesys to provide and maintain the PureConnect Cloud Services until August 15, 2024 and then, at Arbella's election under the Renewal Option, on a month-to-month basis until July 15, 2025.

72. Genesys breached the Agreements by, among other things, demonstrating a clear and unequivocal refusal to provide and maintain the PureConnect Cloud Services, and all other related products and services under the Agreements, after October 2024.

73. Genesys' decision to accelerate the PureConnect Cloud Services End-of-Life from the publicly announced July 31, 2025 date to October 2024 demonstrates a reckless indifference to Arbella's contractual rights, intentional wrongdoing, and constitutes gross negligence or willful misconduct.

74. Genesys' repeated decisions to reaffirm the acceleration of the PureConnect Cloud Services End-of-Life from the publicly announced July 31, 2025 date to October 2024—and repeated rejections of Arbella's demands for adequate assurances—further demonstrate Genesys' reckless indifference to Arbella's contractual rights, intentional wrongdoing, and constitute gross negligence or willful misconduct.

75. Because Genesys' breaching conduct was grossly negligent or willful misconduct, the MSA's limitation of liability provisions do not apply.

76. As a direct and proximate cause of Genesys' anticipatory breach of contract, Arbella has suffered and will continue to suffer damages in an amount to be determined at trial, in excess of $75,000.

77. Additionally, Genesys' failure to provide adequate assurances of continued performance has required Arbella to incur unnecessary expenses and costs, including attorneys' fees and other legal costs, which are the direct and proximate result of Genesys' anticipatory breach of contract.

## COUNT II
## Breach of Contract

78. Arbella realleges and incorporates by reference the allegations of the paragraphs 1 through 67 of this Complaint as though fully set forth herein.

79. The Agreements between Arbella and Genesys are binding and enforceable agreements.

80. Arbella has performed under the Agreements.

81. The Agreements required that Genesys to provide and maintain the PureConnect Cloud Services until August 15, 2024 and then, at Arbella's election under the Renewal Option, on a month-to-month basis until July 15, 2024.

82. Genesys has breached or will breach the Agreements by, among other things, refusing to provide and maintain the PureConnect Cloud Services, and all other related products and services under the Agreements, after October 2024.

83. Genesys' decision to accelerate the PureConnect Cloud Services End-of-Life from the publicly announced July 31, 2025 date to October 2024 demonstrates a reckless indifference to Arbella's contractual rights, intentional wrongdoing, and constitutes gross negligence or willful misconduct.

84. Genesys' repeated decisions to reaffirm the acceleration of the PureConnect Cloud Services End-of-Life from the publicly announced July 31, 2025 date to October 2024—and repeated rejections of Arbella's demands for adequate assurances—further demonstrate Genesys' reckless indifference to Arbella's contractual rights, intentional wrongdoing, and constitute gross negligence or willful misconduct.

85. Because Genesys' breaching conduct was grossly negligent or willful misconduct, the MSA's limitation of liability provisions do not apply.

86. As a direct and proximate cause of Genesys' breach of contract, Arbella has suffered and will continue to suffer damages in an amount to be determined at trial, in excess of $75,000.

87. Additionally, Genesys' failure to perform has required Arbella to incur unnecessary expenses and costs, including attorneys' fees and other legal costs, which are the direct and proximate result of Genesys' breach of contract.

## COUNT III
### Breach of the Implied Covenant of Good Faith and Fair Dealing

88. Arbella realleges and incorporates by reference the allegations of the paragraphs 1 through 67 of this Complaint as though fully set forth herein.

89. There is implied in every contract a covenant of good faith and fair dealing such that no party to any such contract may act to deprive the other of the benefits and bargains of the agreement.

90. Genesys has not acted in good faith and has breached the implied duty of good faith and fair dealing. Among other things, Genesys has refused to provide or maintain the PureConnect Cloud Services from October 2024 to July 2025, which it impliedly promised to do when it entered into the 2023 Services Agreement.

91. Genesys breached the implied duty of good faith and fair dealing when it decided to accelerate the PureConnect Cloud Services End-of-Life date from July 2025 to October 2024.

92. Genesys also breached the implied duty of good faith and fair dealing, from at least December 2023 to present, through its continued refusal to reconsider its decision to accelerate the PureConnect Cloud Services End-of-Life date from July 2025 to October 2024, despite Arbella's repeated requests.

93. Genesys' conduct has destroyed or injured the rights of Arbella to receive the benefits of the contract and violated the mutual expectations of the Parties.

94. As a direct and proximate cause of Genesys' breach of the implied covenant of good faith and fair dealing, Arbella has suffered and will continue to suffer damages in an amount to be determined at trial, in excess of $75,000.

95. Additionally, Genesys' breach of the implied covenant of good faith and fair dealing has required Arbella to incur unnecessary expenses and costs, including attorneys' fees and other legal costs, which are the direct and proximate result of Genesys' actions.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Arbella Service Company, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Genesys Cloud Services, Inc., formerly known as Genesys Telecommunications Laboratories, Inc. as follows:

A. Award Plaintiff compensatory, incidental, and consequential damages;

B. Award Plaintiff preliminary and permanent injunctive relief and the equitable remedy of specific performance against Genesys by requiring Genesys to perform its express and implied obligations under the Agreements for the duration of the Agreements;

C. Award Plaintiff pre-judgment and post-judgment interest;

D. Award Plaintiff costs, expenses, and fees, including attorneys' fees; and

E. Award Plaintiff any other relief that may be just, equitable, and proper.

**JURY DEMAND**

Plaintiff Arbella Service Company, Inc. requests a trial by jury on all claims so triable.

Dated: May 24, 2024

Respectfully submitted,

**ARBELLA SERVICE COMPANY, INC.**

By its attorneys,

*/s/ Scott C. Ford*
Scott C. Ford, BBO # 629280
scford@mintz.com
Grady R. Campion, BBO # 704748
grcampion@mintz.com
MINTZ, LEVIN, COHN, FERRIS,
 GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone:  (617) 542-6000
Facsimile:  (617) 542-2241

## VERIFICATION

I, \_\_\_\_\_Matthew Postulka\_\_\_\_\_, on behalf of and as authorized by Arbella Service Company, Inc., state that I have read the foregoing Verified Complaint and am familiar with its content, and to the best of my knowledge and belief, the facts alleged therein are true and accurate except where stated on information and belief, in which event I believe the same in good faith to be true.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 23, 2024

Name: Matthew Postulka

Title: Vice President & Chief Information Officer

515705227